IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **TRACY C. BARNOWE,** | CV 03-1672-BR |
| Plaintiff, | OPINION AND ORDER |
| v. | |
| **KAISER FOUNDATION HEALTH PLAN OF THE NORTHWEST** and **DON TRAPASSO,** | |
| Defendants. | |

**MITRA T. SHAHRI**
Shahri & Lambert, LLC
1600 KOIN Center
222 S.W. Columbia Street
Portland, OR  97201
(503) 243-4545

      Attorneys for Plaintiff

**CHRIS KITCHEL**
**PHILIP J. NELSON**
Stoel Rives LLP
900 S.W. Fifth Avenue
Suite 2600
Portland, OR  97204-9249
(503) 294-9249

      Attorneys for Defendants

1 - OPINION AND ORDER

**BROWN, Judge.**

This matter comes before the Court on the Motion for Summary Judgment (#23) of Defendants Kaiser Foundation Health Plan of the Northwest and Don Trapasso. For the following reasons, the Court **GRANTS** Defendants' Motion.

## BACKGROUND

The following facts are undisputed unless otherwise noted:

On December 5, 2001, Kaiser hired Plaintiff as a secretary in its regional call center. Don Trapasso was Plaintiff's manager. Plaintiff's job responsibilities included answering the telephone and routing calls, maintaining files, coordinating supply orders, and taking and transcribing meeting notes.

In mid-February 2002, Plaintiff became pregnant, but she did not inform Trapasso. Plaintiff miscarried between March 15 and March 18, 2002. When Plaintiff returned to work, she told Trapasso about her miscarriage. In mid-April during a conversation in which Trapasso inquired after Plaintiff's health and asked her if she "could still have kids," Plaintiff informed Trapasso she "was planning on" trying again to have a child. Plaintiff didn't find Trapasso's question or the manner in which he asked it inappropriate.

On April 3, 2002, Trapasso provided Plaintiff with a performance appraisal in which he stated Plaintiff was "very

2 - OPINION AND ORDER

effective in supporting management with presentation materials
. . . and also in clerical support."  Trapasso also noted
Plaintiff was "professional and demonstrate[d] interest in
furthering her computer skills."  Trapasso noted Plaintiff needed
to "continue to focus attention on the daily support of the
supervisors in appointments and the direct manager of advice."
Nelson Aff., Ex. 1 at 138.

Although the parties dispute the timing of the discussions,
it is undisputed that Trapasso informed Plaintiff she would have
to record, on her time card, the hours she actually worked, she
would need prior approval to work overtime, and she would not be
allowed to unlock supervisor's offices and use their telephones
without permission.[1]

Defendants contend Plaintiff became increasingly difficult
to work with, and certain supervisors refused to work with
Plaintiff throughout May and June 2002.  Plaintiff disputes these
assertions.  On July 3, 2002, Trapasso met with Plaintiff and
asked her to resign, but she refused to resign.

On July 8, 2002, Plaintiff, for the first time, complained
in a letter to Human Resources (HR) about harassment and
discrimination by Trapasso.  A Kaiser HR consultant, Bill

---

[1] Defendants contend Trapasso had these conversations with Plaintiff numerous times before and after she informed him that she planned on trying to get pregnant again.  Plaintiff alleges Trapasso had the conversations with her only after she informed him about her plans.

Butcher, began an investigation of Plaintiff's charges. On July 10, 2002, Butcher met with Plaintiff and informed her that he had not found evidence to support her charges, but he had found evidence of Defendants' concerns regarding Plaintiff's performance. Butcher gave Plaintiff the option of voluntarily resigning by July 12, 2002.

On July 15, 2002, Plaintiff wrote Butcher a letter in which she stated she would not resign and made additional allegations against Trapasso. Butcher and Holly Crabb, Kaiser's Regional Equal Employment Opportunity Coordinator, began an investigation of the charges made in Plaintiff's July 15, 2002, letter.

On August 1, 2002, Butcher met with Plaintiff and explained Kaiser's investigation had not revealed any evidence to substantiate Plaintiff's claims, and Butcher again advised Plaintiff about the issues regarding Plaintiff's performance deficiencies. Butcher gave Plaintiff another chance to resign. Plaintiff declined. Kaiser terminated Plaintiff's employment on August 1, 2002. Subsequently, Trapasso hired another young woman to replace Plaintiff.

**STANDARDS**

Fed. R. Civ. P. 56(c) authorizes summary judgment if no genuine issue exists regarding any material fact and the moving party is entitled to judgment as a matter of law. The moving

party must show the absence of an issue of material fact. *Leisek v. Brightwood Corp.*, 278 F.3d 895, 898 (9th Cir. 2002). In response to a properly supported motion for summary judgment, the nonmoving party must go beyond the pleadings and show there is a genuine issue of material fact for trial. *Id*.

An issue of fact is genuine "'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Villiarmo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002)(quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The court must draw all reasonable inferences in favor of the nonmoving party. *Id*. A mere disagreement about a material issue of fact, however, does not preclude summary judgment. *Jackson v. Bank of Haw.*, 902 F.2d 1385, 1389 (9th Cir. 1990). When the nonmoving party's claims are factually implausible, that party must come forward with more persuasive evidence than otherwise would be required. *Blue Ridge Ins. Co. v. Stanewich*, 142 F.3d 1145, 1147 (9th Cir. 1998)(citation omitted).

The substantive law governing a claim or a defense determines whether a fact is material. *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000). If the resolution of a factual dispute would not affect the outcome of the claim, the court may grant summary judgment. *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 919 (9th Cir. 2001).

**DISCUSSION**

**I. Defendant Is Entitled to Summary Judgment on Plaintiff's Claims under the Pregnancy Discrimination Act and Or. Rev. Stat. § 659A.030 for Pregnancy Discrimination.**

In Plaintiff's First Cause of Action, she alleges claims for both disparate treatment and hostile work environment against Kaiser in violation of the Pregnancy Discrimination Act (PDA), 42 U.S.C. § 2000e(k). In Plaintiff's Third Cause of Action, she alleges discrimination based on sex against Kaiser in violation of Or. Rev. Stat. § 659A.030.

The standard for establishing a *prima facie* case of discrimination under Or. Rev. Stat. § 659A.030 is the same as that used to establish a *prima facie* case of discrimination under Title VII. *Henderson v. Jantzen, Inc.*, 79 Or. App. 654, 658, 719 P.2d 934 (1986). The Court, therefore, will analyze these claims together.

**A. The Statutes**

Title VII provides "[i]t shall be an unlawful employment practice for an employer . . . to discharge or otherwise to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex." 42 U.S.C. 2000e-2(a)(1). In 1978, Congress expanded Title VII's definition section to encompass terms related to discrimination based on pregnancy:

> The terms "because of sex" or "on the basis of sex" include, but are not limited to, because of or on the basis of pregnancy, childbirth, or related medical conditions; and women affected by pregnancy, childbirth, or related medical conditions shall be treated the same for all employment-related purposes . . . as other persons not so affected but similar in their ability or inability to work, and nothing in section 2000e-2(h) of this title shall be interpreted to permit otherwise.

42 U.S.C. § 2000e(k).

Or. Rev. Stat. § 659A.030(1)(a) provides it is an unlawful employment practice for "an employer, because of an individual's . . . sex . . . to refuse to hire or employ or to bar or discharge from employment such individual." Or. Rev. Stat. § 659A.029 defines the phrase "because of an individual's sex" to include "because of pregnancy, childbirth and related medical conditions or occurrences."

**B. Plaintiff's Disparate Treatment Claim**

**1. Requirements to Establish a *Prima Facie* Claim of Disparate Treatment**

A plaintiff may prove unlawful sex discrimination under one of two theories: disparate impact or disparate treatment. Disparate impact involves a "facially neutral employment criterion that has an unequal effect on members of a protected class." *Sischo-Nownejad v. Merced Cmty. Coll. Dist.*, 934 F.2d 1104, 1109 (9th Cir. 1991). Disparate treatment, on the other hand, involves "intentional discrimination on the basis of . . . sex." *Int'l. Bd. of Teamsters v. United States*, 431 U.S. 324,

7 - OPINION AND ORDER

335 n.15 (1977).  *See also Sischo-Nownejad*, 934 F.2d at 1109.  In a disparate treatment claim, "proof of discriminatory motive is critical."  *Teamsters*, 431 U.S. at 335 n.15.

Plaintiff alleges disparate treatment in violation of the PDA and Or. Rev. Stat. § 659A.030.  In order to prove disparate treatment, Plaintiff must first establish a *prima facie* case by "introducing evidence that give[s] rise to an inference of unlawful discrimination."  *Sischo-Nownejad*, 934 F.2d at 1109 (internal quotation omitted).  If Plaintiff establishes a *prima facie* case, the burden then shifts to Kaiser to articulate a legitimate, nondiscriminatory reason for the challenged action.  *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1062 (9th Cir. 2002).  If Kaiser does so, the burden returns to Plaintiff to prove the articulated reason is pretextual.  *Id*.

To establish a *prima facie* case, Plaintiff must demonstrate:  (1) she is a member of the class protected by the statute; (2) she was performing her job in a satisfactory manner; (3) she suffered an adverse employment action; and (4) Kaiser treated her differently than persons outside of her protected class.  *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).  *See also Villiarimo*, 281 F.3d at 1062.

**2.   Plaintiff Is Not a Member of the Protected Class**

Plaintiff alleges she was a member of the class protected by the PDA and Or. Rev. Stat. § 659A.030 at the time

8 - OPINION AND ORDER

the alleged discriminatory acts occurred because she was planning to try to become pregnant again after her miscarriage. In support of her argument, Plaintiff cites *Cleese v. Hewlett-Packard Co.*, 911 F. Supp. 1312 (D. Or. 1995), and *Pacourek v. Inland Steel Co.*, 858 F. Supp. 1393 (N.D. Ill 1994).

In both *Cleese* and *Pacourek*, the plaintiffs were undergoing *in vitro* fertilization treatments in an effort to become pregnant, and their employers were aware of these treatments. Both courts held the plaintiffs were covered under the PDA because the plaintiffs were actively in the process of attempting to become pregnant in the near future. *Cleese*, 911 F. Supp. at 1318; *Pacourek*, 858 F. Supp. at 1401. In any event, this Court need not reach this issue because these cases are clearly distinguishable.

Here Plaintiff was not undergoing *in vitro* fertilization treatments. Plaintiff merely informed Trapasso she was "planning on" trying to get pregnant again. The Court declines to extend the holding of *Cleese* and *Pacourek* to include women who are "planning to try" to become pregnant at some point in the future as part of the class protected under the PDA and Or. Rev. stat. § 659A.030. The Court, therefore, concludes Plaintiff is not a member of the class protected under the PDA or Or. Rev. Stat. § 659A.030. Accordingly, Plaintiff has failed to establish a *prima facie* case of discrimination under either

statute.

   **C.   Plaintiff's Hostile Work Environment Claim**

   To establish a *prima facie* case of sex discrimination based on a hostile work environment, the plaintiff must show 1) she was subjected to verbal or physical conduct relating to a statutorily protected class of which she was a member, 2) the conduct was unwelcome, 3) the harassment complained of was so severe or pervasive as to alter the work environment, and 4) the defendant had notice of the harassment.  *See Vasquez v. County of Los Angeles*, 394 F.3d 634, 642 (9th Cir. 2004).  *See also McGinest v. GTE Serv. Corp.*, 360 F.3d 1103, 1119 (9th Cir. 2004).

   As noted, the Court has already concluded Plaintiff is not a member of the class protected by the PDA or Or. Rev. Stat. § 659A.030.  Plaintiff, therefore, fails to establish a *prima facie* case of hostile work environment under either statute.[2]

   Accordingly, the Court concludes on this record that Defendants are entitled to summary judgment on Plaintiff's First and Third Causes of Action.

---

   [2] Even if Plaintiff was a member of the class protected under the PDA or Or. Rev. Stat. § 659A.030, the Court notes, Plaintiff would not be successful on her hostile work environment claim because she has failed to demonstrate the alleged harassment was "so severe or pervasive as to alter the conditions of [Plaintiff's] employment and create an abusive work environment."  *See Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 270 (2001)(internal quotations omitted).

## II. Plaintiff's Claims for Retaliation under Title VII and Or. Rev. Stat. § 659A.030 Fail.

In Plaintiff's Second Cause of Action, she alleges Kaiser retaliated against her for complaining about discrimination based on sex in violation of Title VII. In Plaintiff's Fourth Cause of Action, she alleges all Defendants retaliated against her for complaining about discrimination based on sex in violation of Or. Rev. Stat. § 659A.030.

### A. Requirements to Establish a *Prima Facie* Case

Under both Title VII and Or. Rev. Stat. § 659A.030(1(f), "A plaintiff may establish a prima facie case of retaliation by showing . . . (1) he engaged or was engaging in [protected] activity . . ., (2) the employer subjected him to an adverse employment decision, and (3) there was a causal link between the protected activity and the employer's action." *Yartzoff v. Thomas*, 809 F.2d 1371, 1375 (9h Cir. 1987)(internal quotation omitted). *See also Lampert v. Clackamas County*, No. 03-828-HA, 2005 WL 730636 (D. Or. Mar. 30, 2005)(analysis of retaliation claim is the same under Title VII and Or. Rev. Stat. § 659A.030).

In order to establish causation, Plaintiff must show by a preponderance of the evidence that her engaging in the protected activity was one of the reasons for Defendants' adverse employment action and she would not have been subjected to the adverse employment action "but for" such activity. *Villiarimo v.*

*Aloha Island Air, Inc.*, 281 F.3d 1054, 1064-65 (9th Cir. 2002) (citation omitted).

### B. Plaintiff Fails to Demonstrate She Would Not Have Been Fired "But For" Her Complaint of Harassment.

It is undisputed that Plaintiff did not make any complaint of harassment or discrimination until after Trapasso asked her to resign. The Supreme Court has made clear with respect to retaliation claims that "[e]mployers need not suspend previously planned [employment actions] upon discovering that a Title VII suit has been filed, and their proceeding along lines previously contemplated, though not yet definitively determined, is no evidence whatever of causality." *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 272 (2001).

In *Breeden*, respondent contended petitioner transferred respondent in retaliation for her filing of a lawsuit against petitioner. 532 U.S. at 271. Respondent filed her lawsuit on April 1, 1997, but she did not serve petitioner with the summons and complaint until April 11, 1997. *Id*. at 272. On April 10, 1997, respondent's supervisor mentioned to the executive director of respondent's union that she was contemplating transferring respondent. *Id*. The Court held even though the transfer actually did not occur until May 1997, respondent failed to show a causal connection between her protected activity of filing a lawsuit and the adverse employment decision of the transfer because petitioner had contemplated the transfer before it knew

12 - OPINION AND ORDER

about respondent's lawsuit. *Id*. at 274.

Here Trapasso asked Plaintiff to resign July 3, 2002, five days before she made her first complaint of harassment and discrimination. Although Defendants did not fire Plaintiff until August 1, 2002, Defendants, like the respondent in *Breeden*, proceeded along lines contemplated before Plaintiff made her complaints. Nonetheless, Plaintiff argues the temporal proximity of the lodging of her complaints to her termination demonstrates the causation element of her retaliation claim. In light of *Breeden*, however, the Court concludes Plaintiff's argument does not demonstrate "causality," and Plaintiff has failed to establish a *prima facie* case of retaliation.

Accordingly, the Court concludes Defendants are entitled to summary judgment on Plaintiff's Second and Fourth Causes of Action.

### III. Plaintiff Has Not Supported Her Claim for Intentional Infliction of Emotional Distress against Trapasso.

#### A. Requirements of a Claim for Intentional Infliction of Emotional Distress

In Plaintiff's Fifth Cause of Action, she alleges a claim of intentional infliction of emotional distress against Trapasso. In order to establish a claim for intentional infliction of emotional distress, Plaintiff must show Trapasso intended to inflict severe emotional distress, his actions were the cause of severe emotional distress, and his acts were an "extraordinary

13 - OPINION AND ORDER

transgression of the bounds of socially tolerable conduct." *Dallal v. Burger King Corp.*, No. 94-909-AS, 1995 WL 747438, at *2 (D. Or. Apr. 17, 1995 )(citation omitted). *See also McGanty v. Staudenrous*, 321 Or. 532, 550, P.2d 841 (1995).

"It is the defendant['s] acts, rather than [his] motives, that must be outrageous." *Dallal*, 1995 WL 747438, at *2 (citations omitted). "The conduct must be 'so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Dallal*, 1995 WL 747438, at *3. Insults, harsh or intimidating words, and rude behavior do not ordinarily result in liability. *Hall v. May Dep't. Stores*, 292 Or. 131, 135, 637 P.2d 126 (1981), *abrogated on other grounds by McGanty*, 321 Or. 532. Furthermore, employer conduct that is "rude, boorish, tyrannical, churlish, and mean" is not actionable. *Watts v. Edgar Maeyens, Jr.*, 112 Or. App. 234, 239, 828 P.2d 479 (1992)(internal quotation omitted).

In addition, Oregon courts have held the act of termination, even if wrongfully motivated, is not sufficient to state a claim for intentional infliction. *Madani v. Kendall Ford, Inc.*, 312 Or. 198, 204-05, 818 P.2d 930 (1991), *abrogated on other grounds by McGanty*, 321 Or. 532. Plaintiff's discharge, therefore, is not a sufficient basis in and of itself for an intentional infliction of emotional distress claim.

14 - OPINION AND ORDER

### B. Plaintiff Fails to Demonstrate the Elements of a Claim for Intentional Infliction of Emotional Distress.

In her deposition, Plaintiff relates eight incidents of Trapasso making comments such as "ever since you've been trying to get pregnant you've been in a fog and you've been making mistakes"; "ever since you've been trying to get pregnant, your mind has been someplace else"; and "ever since you've been trying to get pregnant, you're just not paying attention to my instructions." Nelson Aff., Ex. 1 at 6-7, 10. Plaintiff also relates in her deposition that after she miscarried, Trapasso insisted Plaintiff change her time card to reflect the hours she had actually worked and informed Plaintiff she could not go into supervisor's locked offices and use their telephones without permission.

Even considering these allegations in the light most favorable to Plaintiff, the Court concludes no reasonable juror could find these comments and conversations rise to the level of "aggravated acts of persecution" required to establish a claim for intentional infliction of emotional distress. *Trout v. Umatilla County Sch. Dist.*, 77 Or. App. 95, 102-03, 712 P.2d 814 (1985), *rev. denied*, 300 Or. 704, 716 P.2d 758 (1986).

Accordingly, the Court concludes Trapasso is entitled to summary judgment on Plaintiff's Fifth Cause of Action.

## IV. Plaintiff has not Supported a Claim for Wrongful Discharge against Defendant Kaiser

In her Sixth Cause of Action, Plaintiff alleges Kaiser wrongfully discharged Plaintiff in violation of public policy when it terminated her employment after she complained about discrimination and harassment.

In Oregon, the tort of wrongful discharge was established as a narrow exception to the employment at-will doctrine. *See Walsh v. Consol. Freightways, Inc.*, 278 Or. 347, 351-51 (1977). Oregon courts have identified two situations that give rise to this tort: (1) discharge for exercising a job-related right of important public interest and (2) discharge for complying with a public duty. *Sheets v. Knight*, 308 Or. 220, 230-31 (1989), *abrogated on other grounds by McGanty*, 321 Or. 532 (1995).

A plaintiff cannot state a claim for wrongful termination if the plaintiff merely alleges she was discharged in violation of an existing right rather than because she exercised that right. *Cross v. Eastlund*, 103 Or. App. 138, 141, 796 P.2d 1214, 1216 (1990). *See also Goodlette v. LTM. Inc.*, 128 Or. App. 62, 66, 874 P.2d 1354 (1994) (acknowledges the distinction between discharge for resisting discrimination and discharge because of the discrimination itself in wrongful discharge context). "When bringing a claim for wrongful discharge, the plaintiff 'must establish a causal connection between a protected activity and

16 - OPINION AND ORDER

the discharge.'"  *Ransom v. HBE Corp.*, No. 00-461-KI, 2003 WL 21949158, at *1 (9th Cir. Aug. 13, 2003)(quoting *Estes v. Lewis and Clark Coll.*, 152 Or. App. 372, 954 P.2d 792, 796-97)).

Plaintiff alleges Kaiser fired her after she exercised a job-related right of important public interest when she complained about discrimination and harassment.  *Cross*, 103 Or. App. at 141.  Unlike the plaintiff in *Cross* who merely alleged she was terminated based on sex, Plaintiff here alleges she was terminated in retaliation for complaining about harassment and discrimination.

Again, however, Plaintiff fails to demonstrate a causal connection between her termination and her complaints about harassment and discrimination.  As noted, Trapasso asked Plaintiff to resign five days before she complained about harassment or discrimination.  Although Kaiser did not fire Plaintiff until one month after Plaintiff complained, her termination or separation from employment with Kaiser was already in progress.  As in Title VII retaliation claims, the Court finds as to wrongful discharge claims that employers need not suspend previously planned employment actions merely because a complaint about harassment or discrimination later occurs.  In other words, when an employer proceeds with employment actions previously contemplated, the employer's action is not evidence of causality to support a claim for wrongful discharge.

17 - OPINION AND ORDER

Accordingly, the Court concludes Defendants are entitled to summary judgment on Plaintiff's Sixth Cause of Action for wrongful discharge.

## CONCLUSION

For these reasons, the Court **GRANTS** Defendants' Motion for Summary Judgment (#23).

IT IS SO ORDERED.

DATED this 4th day of May, 2005.

          /s/ Anna J. Brown
          ANNA J. BROWN
          United States District Judge

Barnowe CV 03-1672 O&O.05-02-05.wpd